## SMALL v. KANSAS CITY, Appellant.

### Division One, December 22, 1904.

1. **SIDEWALKS: Notice to City.** Knowledge by the city inspector of sidewalks, whose duty it was to inspect the sidewalk in question, was notice to the city of the defective condition of the walk. It was not necessary under the ordinances of Kansas City that the notice, in order to be binding upon the city, should be to the board of public works. The actual knowledge of the inspector, under those ordinances, was the knowledge of the board and of the city.

2. **————: Presumption and Actual Notice.** Where the inspector of sidewalks for three months had actual knowledge, it was unnecessary to tell the jury that notice to the city would be presumed on account of the continued existence of the defect for that length of time.

3. **EXCESSIVE VERDICT: $10,000.** Plaintiff, the mother of five children, thirty-five years old, stout and healthy, was walking along a wooden sidewalk in the night time, stepped into a hole therein, and was thrown on her side upon the edge of the walk. At the trial she was suffering from a laceration of the cervix, and enlargement and prolapsus of the womb, and the physicians for both plaintiff and defendant testified that she is in a very bad condition, has suffered and will always suffer much pain, and that she will never again be well unless laparotomy, which is a dangerous operation, is performed, or unless the uterus is curetted, which is a very painful process. The evidence connected her condition with the injury. *Held*, that a verdict for $10,000 is not so excessive as to show passion, prejudice or misconduct on the part of the jury, and, hence, is permitted to stand.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott,* Judge.

AFFIRMED.

*J. J. Williams* and *R. J. Ingraham* for appellant.

(1) Plaintiff's instruction 2 is erroneous. "Long time" is a very indefinite expression. As construed by different jurors, it might mean something very different from the true rule. "It must be shown either that the city has notice of the defect, or that it was so obvious, or had existed for such a length of time, as to indicate that the city would have known it if it had used proper care in observing the condition of its streets." Baustian v. Young, 152 Mo. 325; Bonnie v. Richmond, 75 Mo. 437; Badgeley v. St. Louis, 149 Mo. 122; Carrington v. St. Louis, 89 Mo. 208; Railroad v. Kavanaugh, 163 Mo. 54. (2) The instruction holds the city responsible without regard to whether it had reasonable time to repair the defect before the injury. This instruction is in direct conflict with the uniform decisions holding that after notice of the defect, and before the accident, the city is entitled to a reasonable time to repair. The notice must be prior to the accident. But this instruction does not even require the jury to find that the inspector "discovered" the hole before the accident. It does not require the jury to find that the reasonable time to repair which it mentions had expired before the accident. It upsets the causal connection which exists between a defect in a sidewalk, notice of it, time to repair it, an accident and the liability of the city. Reduced to a simple proposition, it means this, that proof of a hole in a walk, notice of it, and reasonable time to repair, gives one who falls therein a right of action, even if the fall was before notice to the city of the condition. This is error. There is no liability until the city has reasonable time to re-

pair.  Badgeley v. St. Louis, 149 Mo. 122; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317.

*Hardin & Taylor* for respondent.

(1)  The phrase "long time," used in instruction numbered 2 given for plaintiff, is not "an indefinite expression" as claimed by appellant.  The term is much more comprehensive than the phrase "a considerable length of time."  And an instruction using those words is approved by the Kansas City Court of Appeals.  Shipley v. Boliver, 42 Mo. App. 401.  The words "long period" mean the same thing and they are used by the best authorities.  2 Shear. & Redf. Neg., sec. 369; Franke v. St. Louis, 110 Mo. 523.  The jury could not possibly have been misled by the instruction when taken in connection with number 1, given for plaintiff, which required the jury to find that the defendant "failed to repair said sidewalk within a reasonable time after it had notice."  Besides, it is not disputed that the hole remained from one to two and a half years, and that the city sidewalk inspector had notice of its existence for four months before the accident.  (2)  As to appellant's third point raised in its brief as to the damages being excessive, we have only to say that in the light of the great volume of testimony as to plaintiff's broken down and wrecked physical condition, the contention of appellant does not merit a reply.  There is no merit in this appeal, and the judgment ought to be affirmed with the statutory ten per cent.

MARSHALL, J.—This is an action for ten thousand dollars damages for personal injuries received by the plaintiff, on December 25, 1901, about eight o'clock p. m., in consequence of stepping into a hole in the plank sidewalk on the west side of Woodland avenue, about sixty-three feet north of Forty-second street, in Kansas City.

The petition is in the usual form in such cases, and

the answer is a general denial, with a plea of contributory negligence. The plaintiff recovered a judgment for five thousand dollars, and the defendant appealed.

The facts are these:

Pursuant to an ordinance approved December 8, 1898, the city constructed a plank sidewalk on the west side of Woodland avenue, from the south side of Thirty-Ninth street to the north side of Forty-second street. The walk was made of planks not less than five feet long, six inches wide, and two inches thick, laid upon three stringers, four by four inches. The hole in the sidewalk which caused the plaintiff's injuries, was seventeen or eighteen inches long, about eight inches wide, and from two and a half to five and a half or six inches deep—the earth below the sidewalk sloping at that that point. At the time of the accident there was no light at or near the place.

The plaintiff is a married woman, thirty-six years of age, the mother of five children, and was living with her husband and children at No. 4215 Highland, which is a short distance south of Forty-second street and a block west of Woodland avenue, and had been living there for about nine months before the accident. She had passed along the sidewalk aforesaid, about once a month during said nine months, in going to the street cars, at Thirty-eighth and Woodland avenue, on her way to the business part of the city, but she had always theretofore gone in the daytime, and she says she had never noticed the hole in the sidewalk and did not know it was there.

At a quarter after seven o'clock on the night of December 25, 1901, she left her said home, with three of her daughters and three other young ladies to go to a dance at Thirty-eighth and Woodland avenue. While walking along the said sidewalk, she stepped into said hole with her left foot, and in consequence was thrown forward on the walk, and in falling she struck a portion of her body partly on the edge of the sidewalk, and

partly on the bank; her foot was caught in the hole, her rubber shoe was pulled off, and she was internally injured. She got up, or was helped up, and after a short time was able to walk the remaining four blocks to the place where the dance was going on, and remained there for about three-quarters of an hour, when she returned home and went to bed. On the twenty-seventh of December, as she says, or on the twenty-ninth, as her physician, Dr. Doyle, says, she sent for Dr. Doyle, and he treated her until January 31, making about nine visits to her during that time. Dr. Doyle says that when he was first called to see the plaintiff she was suffering great pain in the uterus and ovaries and in her back and head and had a profuse hemorrhage from the womb; that on December 29th he "curetted" the uterus and then packed it to stop the hemorrhage, and afterwards used tincture of iodine and carbolic acid for the same purpose; that he again treated her on January 2nd, 4th, 11th, 14th, 25th, and 31st; that he prescribed a support for her to wear, which she has used since; that he did not see her again until about ten days before the trial of this case, which was on the nineteenth of June, 1902, when he examined her with Dr. Hardin; that she has a laceration of the cervix, and enlargement and prolapsus of the womb, which is now verging on the chronic stage; that it is possible that she will suffer the balance of her life, and that in order to cure her it would be necessary to perform laparotomy, which is a very dangerous operation, or to "curet" the uterus. Dr. Hardin testified to substantially the same effect, and in addition said she had other troubles resultant from the fall.

Drs. Anderson and Schofield were appointed by the court to make a physical examination of the plaintiff and were called as witnesses by the defendant, and their testimony showed that the plaintiff is in a bad condition and her health impaired in every way. They described particularly her troubles and said that she

could not be cured except by the operation of laparotomy or by "curetting" the uterus.

The plaintiff showed by the testimony of William Hart, who was then and still is a sidewalk inspector in the city engineer's office of Kansas City, that the sidewalk in question was within his district from May, 1901, to May, 1902, when he was transferred to another district; that he saw the hole in the sidewalk when he inspected the walk, six or seven times before the accident, and saw it in September, October, November and December, 1901, but that he never reported it, or took any steps looking toward its repair, because he did not think it was large enough to cause any injuries.

Alexander Smith, who lived on Woodland avenue, just two doors south of Forty-second street, testified that the hole had been in the sidewalk since May, 1900.

The defendant assigns seven errors, but argues and relies upon only three, to-wit, first, the giving of plaintiff's instruction numbered two; second, the giving of plaintiff's instruction numbered three; and third, that the damages are excessive; and these errors will be considered in their order.

I.

Plaintiff's instruction numbered two, which is challenged by the defendant, is as follows:

"It is not necessary in this case that plaintiff shall prove by positive testimony that the city or any of its officers had actual notice of the defective and dangerous condition of the sidewalk in question, if it was defective and dangerous; it is sufficient if the circumstances show, that by the exercise of reasonable diligence and attention to the condition of the sidewalk, they would have discovered such defects if they existed; and if such sidewalk remained in a defective or dangerous condition for a long time prior to the injury, then knowledge of such defects or dangerous condition may be inferred by the jury from these facts."

To fully appreciate this instruction it is necessary to read it in connection with and after plaintiff's instruction numbered one, which is as follows:

"The court instructs the jury that on the twenty-fifth day of December, 1901, the defendant, Kansas City, was and for a long time had been, a municipal corporation, having by the terms of its charter the exclusive power, control and management over the construction and repairs of the sidewalks in the streets of said city.

"And you are further instructed that as such municipal corporation, it was the duty of the defendant at all times to exercise reasonable care to keep its sidewalks, streets and highways in a condition reasonably safe, for all persons traveling thereon, and walking thereover, with ordinary care, in the nighttime as well as in the daytime. And if you believe from the evidence that the defendant city neglected its duty, and suffered and permitted a sidewalk on the west side of Woodland avenue in said city, at a point about sixty-three feet north of Forty-second street, to become out of repair, and to remain in a broken and dilapidated condition which was unsafe and dangerous, by reason of a hole in said walk, for persons walking thereon and using ordinary care, in the night as well as in the daytime, and that defendant failed to repair said sidewalk within a reasonable time after it had notice of such condition of said sidewalk, or by the exercise or reasonable care on the part of its agents, officers and servants it might have had such notice, and that in consequence of such condition of said sidewalk, the plaintiff, Lutie G. Small, while walking thereon on the night of the 25th of December, 1901, without negligence on her part, fell and was injured, then the jury are bound to find a verdict for the plaintiff."

No fault is found or criticism made of plaintiff's instruction numbered one, and it plainly states the law applicable to the facts in judgment here. For there is

no conflict in the evidence that the hole had existed for over a year, and that the city's inspector had known of it for more than three months before the accident and had not even reported it because he did not think it was large enough to do any harm. There is no room in this case, therefore, for the application of the doctrine that the city must not only have actual or constructive notice of the defect in the sidewalk, but must also have a reasonable time in which to repair it.

It will not do to say that notice to the city inspector, whose duty it was to inspect the sidewalk in question, was not notice to the city. For without objection he was permitted to testify as to his duty to inspect this sidewalk, and as to what was thereafter required to have it repaired. The defendant's contention is that notice, to be binding upon the city, would have to be upon the Board of Public Works. But this is a misapprehension. Section 843 of the Revised Ordinances of Kansas City makes it the duty of the said board to "*cause*" all sidewalks to be inspected at least once every three months and whenever any sidewalk is "found" to be in need of reconstruction or repair, to notify the owner of the abutting property to do so, and if he fails so to do, to have it done by the city contractor, etc.

Thus the ordinance contemplates that the actual work of inspection shall be done by some one other than the Board of Public Works. City sidewalk inspectors usually do that kind of work, and the city inspector says in this case that it was his duty to do so and to report. The knowledge of the inspector was, therefore, the knowledge of the board and of the city, under the facts disclosed by this record, and the whole trouble arose from the conclusion arrived at by the inspector that the hole was not large enough to be dangerous and his failure to report its condition, as he should have done, so that it could have been repaired. And as the property-owner is required by the ordinance to repair

it, or failing to do so the city had a right to have it repaired at the expense of the property-owner, there can be no manner of excuse for allowing it to remain for over three months. The first instruction, therefore, was correct as applied to the facts in this case.

The second instruction here complained of is the legal corollary of the first. It announces in different, but in similar legal words, the same rule, to-wit, that the city is liable if the defect in the sidewalk had existed for such a length of time as that the city should have known of it, if it had exercised ordinary care, and that for the length of time it so existed the law presumed notice on the part of the city. That is the law of presumptive notice arising from continued existence of the nuisance.

There was no error, therefore, in giving the second instruction for the plaintiff. The principal objection that could be made to that instruction is that it was wholly unnecessary in this cause, because here the city was shown to have actual knowledge of the defect. But the giving of such an instruction in this case could not possibly have harmed the defendant, and, therefore, even if all that is charged against it be conceded, for the sake of argument, to be true, it would not constitute reversible error.

## II.

The plaintiff's third instruction, which is challenged, is as follows:

"And you are further instructed that if you believe from the evidence that the witness, William Hart, was sidewalk inspector of Kansas City, and inspected the sidewalk in question, and discovered a hole in said sidewalk on the west side of Woodland avenue and about sixty-three feet north of Forty-second street in said city, then the knowledge of said sidewalk inspector of such condition of the sidewalk was the knowledge of the defendant city; and if you believe that the sidewalk

at said place, by reason of such hole therein, was in a condition not reasonably safe for persons walking thereon using ordinary care, and in the nighttime, as well as in the daytime, and that the city failed to repair said sidewalk within a reasonable time after said sidewalk inspector discovered it to be in such unsafe and dangerous condition, for persons walking on the same using ordinary care, and plaintiff while walking on said sidewalk at said point, and using ordinary care, fell and was injured, by reason of such unsafe and dangerous condition of said sidewalk, then the defendant city is liable for damages in this case, and your verdict must be for the plaintiff.''

The objection to this instruction has been hereinbefore met and decided in the foregoing paragraph of this opinion in discussing the first and second instructions given for the plaintiff, and need not be repeated here.

### III.

The defendant lastly contends that the damages are excessive, and this is the principal contention of the defendant.

It is argued that the laceration of the cervix with which the plaintiff is suffering is not an uncommon affliction of women, and usually results from the giving birth to the first child, and it is said that inflammation and tenderness of the parts and the pain in the back and head, would naturally follow from exudations that are thrown off.

The fact is, however, that the plaintiff was the mother of five children, and before the accident had been stout and healthy, and that since the accident all the doctors who examined her, who testified in the case, both for the plaintiff and for the defendant, agree that she is in a very bad condition, has lost over twenty pounds in weight, has suffered and probably will always suffer much pain, and that she will never be well

again unless she is treated by the curetment process, which does not promise permanent relief, and is very painful, or by having laparotomy performed, which is an exceedingly dangerous operation.

The testimony of the doctors therefore shows that she is in a deplorable condition, and the facts, and the expert opinions, show a connection between her condition and the injury, and there is no room for controversy as to the negligence of the defendant, nor is there any foundation for a charge of contributory negligence on her part. The verdict is not as large as verdicts that have been approved by this court where the injuries were not as serious or painful or probably as permanent as those the plaintiff received. There is nothing on the face of the verdict to show passion, prejudice or misconduct of the jury or to shock the judicial sense of right.

Finding no reversible error in the case, the judgment is affirmed.

All concur, except *Robinson, J.,* absent.